HOFFMAN, APPELLANT, *v.* STATE MEDICAL BOARD OF OHIO, APPELLEE.

[Cite as *Hoffman v. State Med. Bd. of Ohio,*
113 Ohio St.3d 376, 2007-Ohio-2201.]

(No. 2005–1754—Submitted January 10, 2007—Decided May 23, 2007.)

LANZINGER, J.

{¶ 1} This discretionary appeal presents the question of whether Ohio Adm. Code 4731–24–04(A), which prohibits anesthesiologist assistants from performing epidural and spinal anesthetic procedures, conflicts with R.C. 4760.09, which permits anesthesiologist assistants to assist supervising anesthesiologists with the performance of a variety of procedures. We hold that because there is a conflict, the Ohio Administrative Code regulation is invalid.

Case Background

{¶ 2} In May 2000, the Ohio General Assembly enacted R.C. Chapter 4760, which regulates the training, certification, and practice of anesthesiologist assistants in Ohio. Am.Sub.S.B. No. 278, 148 Ohio Laws, Part V, 11484 ("S.B. 278"). Previously, anesthesiologist assistants had not been required by statute to undergo any specific training or certification.

{¶ 3} The appellee, the State Medical Board of Ohio, determines which applicants satisfy certification requirements to become anesthesiologist assistants.

R.C. 4760.04. The board is also authorized by R.C. 4760.19 to adopt rules to implement R.C. Chapter 4760. In May 2003, the board adopted Ohio Adm.Code 4731–24–04(A), which prohibits anesthesiologist assistants from performing epidural and spinal anesthetic procedures.

{¶ 4} Joseph Hoffman, the appellant, is a certified anesthesiologist assistant in Cleveland. Since he began his career in 1982, he has performed epidural and spinal anesthetic procedures as part of his practice. In 2003, he filed an action for declaratory and injunctive relief against the board, asserting that Ohio Adm.Code 4731–24–04(A) conflicts with R.C. 4760.09, the statute that lists the authorized activities of anesthesiologist assistants. After considering cross-motions for summary judgment, the trial court granted summary judgment in favor of Hoffman, finding the rule to be in clear conflict with the statute.

{¶ 5} On appeal to the Tenth District Court of Appeals, the board argued that the administrative rule did not conflict with the statute. Both parties focused their arguments on the word "assist," a word found both in the administrative rules and in the statute. The board asserted that the statute and rules should be read together and interpreted to mean that the anesthesiologist assistant may merely help the supervising anesthesiologist as the supervising anesthesiologist personally performs the specified procedure. Hoffman, on the other hand, contended that the statutory language should be interpreted to mean that the anesthesiologist assistant, who is permitted to perform the procedure personally, thereby helps the supervising anesthesiologist in the overall treatment of the patient. The court of appeals reversed the trial court's judgment, agreeing with the board that the rule did not clearly conflict with the statute.

## The Statute and the Administrative Rule

{¶ 6} R.C. 4760.09 governs the scope of practice of anesthesiologist assistants and provides:

{¶ 7} "If the practice and supervision requirements of section 4760.08 of the Revised Code are being met, an anesthesiologist assistant may *assist* the supervising anesthesiologist in developing and implementing an anesthesia care plan for a patient. In providing assistance to the supervising anesthesiologist, an anesthesiologist assistant may do any of the following:

{¶ 8} "(A) Obtain a comprehensive patient history and present the history to the supervising anesthesiologist;

{¶ 9} "(B) Pretest and calibrate anesthesia delivery systems and monitor and obtain and interpret information from the systems and monitors;

{¶ 10} "(C) *Assist* the supervising anesthesiologist with the implementation of medically accepted monitoring techniques;

{¶ 11} "(D) Establish basic and advanced airway interventions, including intubation of the trachea and performing ventilatory support;

{¶ 12} "(E) Administer intermittent vasoactive drugs and start and adjust vasoactive infusions;

{¶ 13} "(F) Administer anesthetic drugs, adjuvant drugs, and accessory drugs;

{¶ 14} "(G) *Assist* the supervising anesthesiologist with the performance of epidural anesthetic procedures and spinal anesthetic procedures;

{¶ 15} "(H) Administer blood, blood products, and supportive fluids." (Emphasis added.)

{¶ 16} The board adopted Ohio Adm.Code 4731–24–04(A) after R.C. 4760.09 was enacted. This rule expressly prohibits anesthesiologist assistants from performing epidural and spinal anesthetic procedures: "(A) Nothing in this chapter of the Administration Code or Chapter 4760. of the Revised Code shall permit an anesthesiologist assistant to perform any anesthetic procedure not specifically authorized by Chapter 4760. of the Revised Code, including epidural and spinal anesthetic procedures and invasive medically accepted monitoring techniques. For purposes of this chapter of the Administrative Code, 'invasive medically accepted monitoring techniques' means pulmonary artery catheterization, central venous catheterization, and all forms of arterial catheterization with the exception of brachial, radial and dorsalis pedis cannulation."

### The Conflict Issue Between the Rule and the Statute

{¶ 17} Administrative rules are designed to accomplish the ends sought by the legislation enacted by the General Assembly. *Carroll v. Dept. of Adm. Servs.* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 460 N.E.2d 704. Therefore, "[r]ules promulgated by administrative agencies are valid and enforceable unless unreasonable or in conflict with statutory enactments covering the same subject matter." *State ex rel. Curry v. Indus. Comm.* (1979), 58 Ohio St.2d 268, 269, 12 O.O.3d 271, 389 N.E.2d 1126. The board derives its power to adopt administrative rules from R.C. 4760.19, which authorizes the board to adopt rules to implement R.C. Chapter 4760. However, an administrative rule may not add to or subtract from a legislative enactment. *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Ohio Bur. of Emp. Servs.* (1986), 21 Ohio St.3d 5, 10, 21 OBR 269, 487 N.E.2d 288. If it does, it creates a clear conflict with the statute, and the rule is invalid. Id.

{¶ 18} The board contends that the administrative rule does not conflict with the statute. Pointing to the legislative history, the board argues that the legislature did not intend to allow anesthesiologist assistants to perform epidural and spinal anesthetic procedures. It is the board's position that by using the word "assist" in the statute, the legislature intended to preclude anesthesiologist

assistants from actually inserting the needle during epidural or spinal anesthetic procedures. On the other hand, Hoffman argues that the legislature used the word "assist" in its technical sense, which he argues is "to perform procedures as requested by a supervising physician." To support his assertion that this is the technical meaning of the word "assist" within the field of anesthesiology, Hoffman submitted an affidavit from Joel Zivot, M.D., a board-certified anesthesiologist and the director of the anesthesiologist-assistant program at Case Western Reserve University, who stated that, as used in the medical field, the word "assist" has a technical meaning, which is "to perform the help that is needed by a physician, and includes the actual performance of procedures under appropriate circumstances." Hoffman also notes that the board had used this same meaning for "assist" in its administrative rules relating to R.C. Chapter 4760. Under Hoffman's interpretation, an anesthesiologist assistant is allowed to insert the needle under the direct supervision of the anesthesiologist during epidural or spinal anesthetic procedures. Thus, he argues, the rule prohibiting that practice conflicts with the statute.

{¶ 19} Because the administrative rule expressly prohibits anesthesiologist assistants from performing epidural or spinal anesthetic procedures—procedures that R.C. 4760.09(G) allows an anesthesiologist assistant to "assist" in, the outcome of this case depends upon the meaning of the word "assist."

## Meaning of "Assist"

{¶ 20} "Assist" is not defined in R.C. Chapter 4760, but is found in the Administrative Code's definitional section that regulates anesthesiologist assistants. Ohio Adm.Code 4731-24-01. Hoffman claims that the Administrative Code definition is consistent with the technical meaning of "assist" that is generally accepted in the field of anesthesiology. Ohio Adm.Code 4731-24-01(B) states:

{¶ 21} " 'Assist' means to carry out procedures as requested by the supervising anesthesiologist, provided that the requested procedure is within the anesthesiologist assistant's training and scope of practice, is authorized by the practice protocol adopted by the supervising anesthesiologist, and is not prohibited by Chapter 4731. or 4760. of the Revised Code, or by any provision of Chapter 4731. of the Administrative Code."

{¶ 22} Parsing the definition, we observe that an anesthesiologist assistant may carry out a procedure as requested by a supervising physician, provided that the procedure satisfies three tests. First, the procedure must be within the assistant's training and scope of practice. R.C. 4760.031 sets forth the training requirements for certification as an anesthesiologist assistant. Those requirements include clinical experience consisting of at least 2,000 hours of direct patient contact, including instruction on indwelling vascular catheter placement,

including intravenous and arterial catheters; administration and maintenance of volatile anesthetics, anesthetic agents, narcotics, hypnotics, and muscle relaxants; patient monitoring; and regional anesthesia techniques. These statutory requirements ensure that the anesthesiologist assistant has the skills to perform the procedures that a supervising anesthesiologist may request. It appears that epidural and spinal anesthetic procedures are subjects covered within an assistant's training and scope of practice.

{¶ 23} Second, the procedure must be authorized by the practice protocol adopted by the supervising anesthesiologist. R.C. 4760.08 requires that the supervising anesthesiologist adopt written practice protocol that delineates the services that the assistant is authorized to provide and the manner in which the anesthesiologist will supervise the assistant. Significantly, the anesthesiologist assistant is prohibited from practicing unless he or she is "under the direct supervision and in the immediate presence" of an anesthesiologist "who is actively and directly engaged in the clinical practice of medicine." R.C. 4760.08. Furthermore, the assistant may practice only in a hospital or ambulatory surgical facility. Id.

{¶ 24} Finally, the procedures requested of an assistant must not be prohibited by R.C. Chapter 4731 or 4760. R.C. Chapter 4760 sets forth the procedures and activities that an assistant may perform. The only prohibitions listed in the statutes are the supervision and location requirements set out in R.C. 4760.08 just discussed.

{¶ 25} In summary, the definition promulgated by the board in Ohio Adm.Code 4731–24–01(B) explains that for the practice of anesthesiology, the term "assist" means "[t]o carry out procedures as requested by the supervising anesthesiologist."

{¶ 26} In advancing its definition, the board argues that the legislature intended the word "assist" to have its dictionary meaning of "to help," or "to aid." It contrasts the legislature's choice of verbs such as "administer," "establish," and "calibrate," used in other subsections of R.C. 4760.09, with its use of the word "assist" in subsections (C) and (G). However, because the word "assist" has a technical meaning in the field of anesthesiology, as demonstrated by Hoffman through his expert's affidavit and by the definition set forth in the Ohio Administrative Code, we believe that the General Assembly intended that technical meaning to apply.[1] "It is established law in Ohio that [in construing statutes], where a word has a technical definition differing from its dictionary definition, it

---

1. When S.B. 278, which enacted R.C. Chapter 4760, was debated and passed, the legislature heard testimony from anesthesiologists and anesthesiologist assistants. Rotunda, Inc., Capitol Connection, Professional Edition, at *http://han2.hannah.com/htbin/f.com/oh_ban_123:SB278.notes* (accessed Mar. 27, 2007).

shall be construed according to the former." *Youngstown Sheet Tube Co. v. Lindley* (1978), 56 Ohio St.2d 303, 309, 10 O.O.3d 423, 383 N.E.2d 903. An axiom of statutory construction is that "[w]ords * * * that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42; see also *State v. Rentex, Inc.* (1977), 51 Ohio App.2d 57, 5 O.O.3d 173, 365 N.E.2d 1274, paragraph one of the syllabus (terms in a statute regulating a specialized industry that uses terms that have acquired technical meanings in the industry require a technical interpretation).

{¶ 27} Applying the technical definition of "assist" to R.C. 4760.09 and specifically to subsections (C) and (G), the statute reads:

{¶ 28} "In providing assistance to the supervising anesthesiologist, an anesthesiologist assistant may do any of the following:

{¶ 29} " * * *

{¶ 30} "(C) [Carry out] the implementation of medically accepted monitoring techniques [as requested by the supervising anesthesiologist].

{¶ 31} " * * *

{¶ 32} "(G) [Carry out] the performance of epidural anesthetic procedures and spinal anesthetic procedures [as requested by the supervising anesthesiologist]."

{¶ 33} Therefore, the statute permits anesthesiologist assistants to perform epidural and spinal anesthetic procedures provided that, pursuant to R.C. 4760.08, the assistants are directly supervised by an anesthesiologist. The term "assist" as used in R.C. 4760.09 means "to carry out procedures as requested by the supervising anesthesiologist."

{¶ 34} In contrast to the statute, Ohio Adm.Code 4731–24–04(A) states that anesthesiologist assistants are not permitted to perform "any anesthetic procedure not specifically authorized by Chapter 4760. of the Revised Code, including epidural and spinal anesthetic procedures." Because the administrative rule prohibits anesthesiologist assistants from performing procedures that the statute permits, the rule clearly conflicts with the statute.

{¶ 35} We emphasize that R.C. 4760.08 permits an anesthesiologist assistant to carry out epidural and spinal anesthetic procedures as requested by and performed under the direction of a supervising anesthesiologist who is physically present in the room. Without such direct supervision, performance of these procedures by an anesthesiologist assistant would violate the statute.

## Conclusion

{¶ 36} We hold that Ohio Adm.Code 4731–24–04(A), which prohibits anesthesiologist assistants from performing epidural and spinal anesthetic procedures, is

invalid because it conflicts with R.C. 4760.09. We therefore reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and CUPP, JJ., concur.

———————

Benesch, Friedlander, Coplan, Aronoff, L.L.P., N. Victor Goodman, C. David Paragas, Marc S. Blubaugh, and Jennifer M. Turk, for appellant.

Marc Dann, Attorney General, Brian Laliberte, Deputy First Assistant Attorney General, Elise Porter, Acting State Solicitor, Stephen P. Carney, Deputy Solicitor, Lawrence D. Pratt, and Rebecca J. Albers, Assistant Attorneys General, for appellee.

Colleen Treml; Janet L. Miller; Taft, Stettinius & Hollister, L.L.P., and Robert E. Rich; Elayne R. Biddlestone; Lagos & Lagos, P.L.L., and James H. Lagos; Eastman & Smith, Ltd., and Kevin Devaney, urging reversal on behalf of amici curiae Case Western Reserve University, University Hospitals of Cleveland, the Anesthesia Associates of Cincinnati, the Academy of Medicine of Cleveland/Northern Ohio Medical Association, McCallum Robinson Hoyt, M.D., M.B.A., Mercy Anesthesiologists, Inc., and Medical College of Ohio Physicians, L.L.C.

Samuel B. Weiner Co., L.P.A., and Samuel B. Weiner, urging reversal for amici curiae the American Academy of Anesthesiologist Assistants and the Ohio Academy of Anesthesiologist Assistants.

Chester, Willcox & Saxbe, L.L.P., Sarah D. Morrison, and Charles R. Saxbe, urging affirmance for amicus curiae Ohio Society of Anesthesiologists.